UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

William Muncy, et al.,                        Case No. 3:12cv2301

        Plaintiffs

        v.                                    MEMORANDUM OPINION
                                             AND ORDER

Kevin Siefker, et al.,

        Defendants

## INTRODUCTION

This matter is before me on the motion of Defendant David Lee Woodruff, M.D., to dismiss the Complaint filed by Plaintiffs William and Nina Muncy for failure to state a claim upon which relief may be granted pursuant to Fed. R. Civ. Pro. 12(b)(6). (Doc. No. 15). The Plaintiffs have filed a response. (Doc. No. 18). Dr. Woodruff filed a reply. (Doc. No. 25). For the reasons stated below, Dr. Woodruff's motion is denied.

## BACKGROUND

On September 12, 2012, the Plaintiffs filed a complaint naming Dr. Woodruff and three employees of the Putnam County Sheriff's Office as defendants and alleging those four individuals are liable for alleged violations of William Muncy's constitutional rights.[1] (Doc. No. 1). The

---

[1] The Plaintiffs previously filed a complaint naming different defendants and seeking compensatory and punitive damages for alleged constitutional violations arising out of the same events alleged here. (*See Muncy v. Beutler*, 3:12-cv-804, Doc. No. 1). On November 29, 2012, the Plaintiffs filed a motion to consolidate the two cases, which I granted on December 11. (3:12-cv-804, Doc. No. 45, Doc. No. 47). The docket numbers cited throughout the text of this Opinion and Order refer to the docket of case number 3:12-cv-2301, unless otherwise noted.

Plaintiffs allege: William was wrongfully arrested and falsely imprisoned at the Putnam County Jail; that he was denied access to "necessary and critical medical care and reasonable accommodations for his known medical illnesses, conditions, and disabilities . . ."; and that he was maliciously prosecuted. (Doc. No. 1 at 2). Dr. Woodruff "is, and at all times relevant was, a medical doctor contracted . . . to provide necessary medical care . . . to inmates and pretrial detainees confined to the Putnam County Jail . . . ." (Doc. No. 1 at 5). William suffers from numerous and severe health conditions and problems, and takes a substantial number of prescription medications. (*See* Doc. No. 1 at 5-6).

On September 12, 2011, William was arrested by deputies from the Putnam County Sheriff's Office, allegedly for obstruction of justice. (Doc. No. 1 at 6-7). After his arrest, William's daughter "informed Putnam County Jail staff and personnel of [William's] serious medical needs and the necessity of his receiving twice daily injections of . . . an anti-coagulant used to prevent the formation of blood clots and resulting strokes." (Doc. No. 1 at 8). The Plaintiffs allege that, despite the fact that William's medications arrived at the jail with him, William did not receive any of his medications and subsequently suffered a stroke while at the Putnam County Jail. (Doc. No. 1 at 9-10).

The Plaintiffs allege Dr. Woodruff: (1) violated William's Fourteenth Amendment rights through deliberate indifference to William's known and serious medical needs, and is liable for his personal failure to treat William and as the supervisor of all medical personnel at the Putnam County Jail; and (2) negligently failed to provide medical care as required by Ohio law. (Doc. No. 1 at 17-21, 24-26). Dr. Woodruff seeks to have the claims against him dismissed, asserting "[t]he Plaintiffs' Complaint does not contain the necessary allegations to state a claim under 42 U.S.C. § 1983 . . . [and that] Plaintiffs have failed to provide an expert Affidavit of Merit to establish the sufficiency of

2

the medical negligence allegations against Dr. Woodruff as required by Ohio R. Civ. P. 10(D)(2)." (Doc. No. 15 at 1).

## STANDARD

In deciding a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), a trial court's function is to test the legal sufficiency of the complaint. The court shall accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the complaint in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Jones v. City of Carlisle, Ky.*, 3 F.3d 945, 947 (6th Cir. 1993). The court need not accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *Republic Bank & Trust Co v. Bear Sterns & Co., Inc.*, 683 F.3d 239, 246 (6th Cir. 2012).

To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must offer "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

**42 U.S.C. § 1983**

Dr. Woodruff claims the Plaintiffs' Complaint "states bare legal conclusions" as to their § 1983 claims and is legally insufficient because it fails to "allege acts or omissions by Dr. Woodruff sufficiently harmful to show deliberate indifference." (Doc. No. 15 at 3). Dr. Woodruff argues the Plaintiffs first must establish the elements of a medical negligence claim before they can establish that Dr. Woodruff's actions or omissions constitute deliberate indifference, and asserts the Plaintiffs

cannot establish negligence because they have not produced an Affidavit of Merit or alleged Dr. Woodruff had a duty to administer medication at the Putnam County Jail. (Doc. No. 15 at 7). Further, Dr. Woodruff argues the Plaintiffs make only a "blanket assertion" concerning Dr. Woodruff's negligence or deliberate indifference in treating or failing to treat William, "without the support of an expert Affidavit of Merit as required by Ohio Civ.R. 10(D)." (Id.). Dr. Woodruff's argument must fail, however, as a consequence of the clear adequacy of the Complaint, fundamental principles of our federal system, and clear United States Supreme Court precedent.

> The Complaint contains the following factual allegations, among others:
>
> (1) "Upon information and belief, [jail employees] contacted [Dr. Woodruff] and informed him of [William's] serious and life threatening medical conditions as well as his need for multiple prescription medications." Dr. Woodruff did not go to the Putnam County Jail to personally evaluate William, establish a plan for his treatment or medication disbursement, or order a prompt and appropriate evaluation, screening, or assessment of William. (¶ 35).
>
> (2) Dr. Woodruff was "subjectively aware of William Muncy's serious medical conditions" as William, his daughter, or both, "specifically informed [Dr. Woodruff] of these conditions, the probable results if these conditions were ignored or untreated, and the appropriate manner in which to treat these conditions. In the alternative, these severe medical conditions were so obvious and apparent that even a lay person would perceive the need for a doctor's attention and immediate medical intervention." (¶ 67).
>
> (3) Despite his knowledge of William's serious medical conditions, Dr. Woodruff failed or refused to provide "the necessary medical care, assessment, evaluation, referral, and treatment . . . ." (¶ 68).
>
> (4) Dr. Woodruff knew or should have known that failing or refusing to provide William with his prescribed medications, to provide timely access to appropriate care once William "began exhibiting signs and symptoms suggestive of a stroke or medical emergency . . .", or to provide any medical treatment or care "could and would cause rapid and permanent deterioration" of William's health. (¶ 69).
>
> (5) Dr. Woodruff "had actual knowledge of the serious medical conditions from which [William] suffered, the numerous prescription medications he required, and the highly probable consequence, serious injury or death, if he did not timely receive these numerous medications." (¶ 74).

(Doc. No. 1). These allegations are "more than labels and conclusions," and I find they provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570.

4

Dr. Woodruff's claim that without "any expert medical support, in the form of an expert Affidavit of Merit or otherwise . . . there is no way to determine" whether Dr. Woodruff's actions or omissions constitute negligence or deliberate indifference is unavailing. (*See* Doc. No. 25 at 4). Ohio Civ.R. 10(D)(2) "requires that every complaint containing a medical claim as defined in [O.R.C.] 2305.113 . . . be accompanied by an affidavit of merit . . ." from an expert qualified under the Ohio Rules of Evidence. *Fletcher v. Univ. Hosps. of Cleveland*, 120 Ohio St.3d 167, 169 (2008). On its face, Ohio Civ.R. 10(D)(2) does not apply to the Plaintiffs' § 1983 claims because those claims allege violations of William's rights as guaranteed by the United States Constitution, and do not raise medical claims under Ohio law. Neither Ohio nor any other State may alter or negate the rights protected by the United States Constitution or modify the means which Congress provided for the enforcement of those rights. *See* U.S. Const. art. VI, cl. 2. The fact that Dr. Woodruff's alleged action or inaction involves the provision of medical care to William, or that the Plaintiffs separately allege medical negligence under Ohio law, does not make the state civil rule relevant to the federal cause of action.

Moreover, the Plaintiffs need not prove the elements of negligence as a stepping stone to proving Dr. Woodruff's actions or omissions rise to the level of deliberate indifference. In order to state a cognizable claim for a violation of the Eighth Amendment, an inmate "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Supreme Court has defined deliberate indifference for Eighth Amendment purposes as knowledge and disregard of "an excessive risk to inmate health or safety . . . ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also id.* at 847 (official "may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable efforts to abate it"). "Whether a prison official had the requisite knowledge of a substantial risk is a

5

question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

The Plaintiffs allege jail employees informed Dr. Woodruff of William's "serious and life threatening medical conditions, as well as his need for multiple prescription medications," and that Dr. Woodruff failed to provide any care. (Doc. No. 1 at 9-10). Dr. Woodruff still may prove he was "unaware even of an obvious risk to inmate health or safety . . ." or that he "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. He has not yet produced any evidence of this type, however, and so his motion to dismiss the Plaintiffs' § 1983 claims fails.

**MEDICAL MALPRACTICE**

Dr. Woodruff argues the expert Affidavit of Merit requirement set forth in Ohio Civ.R. 10(D)(2) applies to medical negligence claims under Ohio law even when those claims are presented in federal court and, as a result, Count VIII of the Complaint should be dismissed. (Doc. No. 15 at 8-10). Dr. Woodruff asserts that federal courts in Ohio and around the country have "repeatedly" and "continually" held that Ohio Civ.R. 10(D)(2) specifically, and state laws requiring expert Affidavits of Merit generally, are substantive laws that must be applied when a federal court exercises diversity or supplemental jurisdiction to hear a state law medical negligence action, pursuant to the principles announced in *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), and its progeny. (Doc. No. 15 at 8). As the Plaintiffs point out,[2] however, "the law in this area is by no means settled . . . ." (Doc. No. 18 at 16). The Sixth Circuit has not addressed whether Ohio Civ.R.

---

[2] Similarly to Dr. Woodruff, the Plaintiffs assert that "federal courts sitting [in] diversity have consistently refused to apply state affidavit of merit statutes on the ground that they conflict with the pleading requirement set forth in Fed. R. Civ. P. 8." (Doc. No. 18 at 17). The conundrum of how these apparently contradictory results could reflect a consistent or continual application, or rejection, is one best left for another day.

10(D)(2) applies in federal court, "though a majority of courts – including all of the circuit courts to decide the question – have applied [similar] requirements to federal actions." *Jones v. Corr. Med. Serv., Inc.*, 845 F. Supp.2d 824, 854 (W.D. Mich. 2012) (collecting cases).[3]

Ohio Civ.R. 10(D)(2) requires the plaintiff to include an Affidavit of Merit provided by an expert witness qualified under the Ohio Rules of Evidence with any complaint alleging a medical claim under O.R.C. 2305.113. The Affidavit of Merit "shall include all of the following:"

> (i) a statement that the affiant has reviewed all medical records reasonably available to the plaintiff concerning the allegations contained in the complaint;
> (ii) a statement that the affiant is familiar with the applicable standard of care;
> (iii) the opinion of the affiant that the standard of care was breached by one or more of the defendants to the action and that the breach caused injury to the plaintiff.

Ohio Civ.R. 10(D)(2). Additionally, Ohio Civ.R. 10(D)(2) states an Affidavit of Merit is necessary "to establish the adequacy of the complaint" and the Affidavit is not "otherwise admissible as evidence or [to be] used for purposes of impeachment. Any dismissal for the failure to comply with this rule shall operate as a failure otherwise than on the merits." Id.

"Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state." *Erie R.R.*, 304 U.S. at 78. A federal court considering whether a state law should apply in an action maintained through diversity or supplemental jurisdiction first must consider whether one or more of the Federal Civil Rules "answers the question in dispute. If it does, it governs . . . unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S.Ct. 1431, 1437 (2010) (citations omitted). If a federal rule does not apply, the court must ask "does it significantly

---

[3] Three circuit court panels have concluded the affidavit of merit requirement at issue applied in federal court – *Liggon-Redding v. Estate of Sugarman*, 659 F.3d 258, 262-65 (3d Cir. 2011) (concluding Pennsylvania R. Civ. P. 1042.3 did not conflict with Fed. R. Civ. Pro. 7, 8, 9, 11, or 41(b)); *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (concluding a New Jersey statute did not conflict with Fed. R. Civ. Pro. 8 or 9); and *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1540 (10th Cir. 1996) (concluding a Colorado statute did not conflict with Fed. R. Civ. Pro. 11). *Jones*, 845 F.Supp.2d at 854 n.11.

affect the result of a litigation for a federal court to disregard a law that would be controlling in an action upon the same claim by the same parties in a State court." *Hanna v. Plumer*, 380 U.S. 460, 468 (1965) (*quoting Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109 (1945)). "The *Erie* rule is rooted in part in a realization that it would be unfair for the character of result of a litigation materially to differ because the suit had been brought in a federal court. . . . [It] also [was] in part a reaction to the practice of 'forum-shopping' . . . ." *Hanna*, 380 U.S. at 467.

Dr. Woodruff cites to a number of cases in which judges in the Northern District of Ohio have concluded Ohio Civ.R. 10(D)(2) is a substantive law for the purpose of the *Erie* analysis. (*See* Doc. No. 15 at 8 (*citing Perotti v. Medlin*, No. 4:05-cv-2739, 2009 WL 723230 (N.D. Ohio March 16, 2009), *Nicholson v. Catholic Health Partners*, No. 4:08-cv-2410, 2009 WL 700768 (N.D. Ohio March 13, 2009), *Bierbauer v. Manetti*, No. 4:09-cv-2142, 2010 WL 4008835 (N.D. Ohio October 12, 2010), *Daniel v. U.S.*, 716 F. Supp.2d 694 (N.D. Ohio 2010))). I respectfully disagree with my colleagues' analysis, however, and conclude Ohio Civ.R. 10(D)(2) states a procedural rule of law that does not apply in this case as a result of a direct conflict with the Federal Civil Rules.

The Plaintiffs note Fed. R. Civ. Pro. 8 "sets forth the pleading requirements in this litigation" and argue that Ohio Civ.R. 10(D)(2) does not apply because it would require dismissal of the medical malpractice claims where Fed. R. Civ. Pro. 8 would not. (Doc. No. 18 at 15-16). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a)(2). The Supreme Court has stated that this standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 555). The standard is based in part on the principle that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679 (*citing Twombly*, 550 U.S. at 556). There is a direct conflict,

8

in practical effect, between Fed. R. Civ. Pro. 8 and Ohio Civ.R. 10(D)(2) that prevents the application of the state rule in this case.

In *Fletcher v. Univ. Hosps. of Cleveland*, 897 N.E.2d 147 (Ohio 2008), the Supreme Court of Ohio considered "the appropriate procedural steps a defendant must undertake when a plaintiff who brings a medical claim fails to attach an affidavit of merit to the complaint as required by Civ.R. 10(D)(2)." *Id.* at 148. The plaintiff asserted claims for wrongful death and negligence, which the defendant moved to dismiss for lack of an affidavit of merit. *Id.* at 148-49. The trial court dismissed the plaintiff's claims with prejudice. *Id.* at 149. The court of appeals reversed, concluding that a motion for a more definite statement under Ohio Civ.R. 12(E) was the proper procedure. *Id.* The Supreme Court of Ohio held "the proper response to the failure to file the affidavit required by Civ.R. 10(D)(2) is a motion to dismiss filed under Civ.R. 12(B)(6)." *Id.* at 148.

The cases Dr. Woodruff cites – *Perotti*, *Nicholson*, *Bierbauer*, and *Daniel* – are similar in that each case relies at least in part on a decision issued by the Court of Appeals for the Third Circuit, *Chamberlain v. Giampapa*, 210 F.3d 154 (3rd Cir. 2000). In that case, the court considered the applicability of N.J.S.A. §§ 2A:53A-26 to -29, a New Jersey statute that required medical malpractice plaintiffs to file an affidavit of merit. *Chamberlain*, 210 F.3d at 156-57. The New Jersey affidavit of merit statute "requires that the plaintiff file an affidavit of a licensed physician within 60 days of the date the answer is filed . . . ." *Id.* at 157. If the plaintiff fails to file the affidavit within the prescribed time frame, the plaintiff's claim will be dismissed with prejudice. *Id.* at 161 (*citing Cornblatt v. Barow*, 708 A.2d 401, 415 (N.J. 1998)). The Third Circuit upheld the district court's conclusion that the New Jersey affidavit of merit statute was a substantive law which, under *Erie* and its progeny, applied to Chamberlain's state law claims brought in a federal diversity action. *Chamberlain*, 210 F.3d at 161.

9

There are three details which distinguish the New Jersey affidavit of merit statute and the reasoning in *Chamberlain* from the facts of this case: (1) the failure to file an affidavit of merit under New Jersey law resulted in a dismissal with prejudice; (2) the New Jersey legislature, by statute – rather than the Supreme Court of New Jersey, by rule – implemented the affidavit requirement; and (3) the plaintiff did not need to file the affidavit of merit until 60 days after the pleadings closed. *See Chamberlain*, 210 F.3d at 160; N.J.S.A. § 2A:53A-27, -29. The Third Circuit concluded the New Jersey affidavit of merit statute did not conflict with Fed. R. Civ. Pro. 8 and 9 because the New Jersey statute had "no effect on what is included in the pleadings of a case or the specificity thereof," and therefore "[t]his state policy [could] be effectuated without compromising any of the policy choices reflected in Federal Rules 8 and 9." *Chamberlain*, 210 F.3d at 160. The Third Circuit reasoned that "[b]y requiring dismissal for failure to adhere to the statute, the New Jersey legislature clearly intended to influence substantive outcomes. It sought early dismissal of meritless lawsuits, not merely to apply a new procedural rule." *Id.* at 161.

It is true the Supreme Court of Ohio states Civ.R. 10(D)(2) is motivated by "important policy considerations warranting a limitation on the number of claims" alleging medical malpractice. *Fletcher*, 897 N.E.2d at 150. It seems clear, however, that the Affidavit of Merit requirement plays a gate-keeping function for Ohio courts. The rule was implemented by the Supreme Court of Ohio and is not part of a larger legislative scheme designed to address or rectify potential abuse of the court system by medical malpractice claimants. The Supreme Court of Ohio states "[t]he rule is designed to ease the burden on the dockets of Ohio's courts," and "the very purpose of Civ.R. 10(D)(2) is to place a heightened pleading requirement on parties bringing medical claims." *Id.* Ohio Civ.R. 10(D)(2) "goes directly to the sufficiency of the complaint" and does not affect "the merits of [the] claim, . . . [as] a dismissal for failure to comply with Civ.R. 10(D)(2) is without prejudice." *Id.* at 150-51. The Supreme Court of Ohio selected Ohio Civ.R. 12(B)(6) as the proper

10

course because "such a motion is a procedural tool" – one that reveals procedural deficiencies. *Id.* at 150 (*citing Hanson v. Guernsey Cnty. Bd. of Comm'rs*, 605 N.E.2d 378, 381 (Ohio 1992)).

In *Daniel*, *Nicholson*, *Perotti*, and *Bierbauer*, the courts appear to assume Ohio Civ.R. 10(D)(2) is substantive because a failure to comply with the rule leads to dismissal of the complaint under *Fletcher*. *See Daniel*, 716 F. Supp.2d at 698 ("Failure to attach an affidavit of merit results in dismissal. The requirement to attach one, therefore, must be substantive."); *see also Nicholson*, 2009 WL 700768, at *4-5; *Perotti*, 2009 WL 723230, at *10; *Bierbauer*, 2010 WL 4008835, at *10. As the Supreme Court of Ohio noted in *Fletcher* and *Troyer*, however, a dismissal for failure to comply with Ohio Civ.R. 10(D)(2) "is not based on the merits of the case . . . ." *Troyer v. Janis*, 971 N.E.2d 862, 864 (Ohio 2012); *see also Fletcher*, 897 N.E.2d at 151 ("the dismissal was not on the merits of [the plaintiff's] claim"). Such a dismissal has no effect on the end result of a claim because a plaintiff may simply refile the complaint within the state statute of limitations period. *See Troyer*, 971 N.E.2d at 865 (rejecting defendants' argument that plaintiffs should have appealed the earlier dismissal for failure to comply with Ohio Civ.R. 10(D)(2) and noting the re-filing "approach has the additional advantage of avoiding the delay engendered by <u>yet another unnecessary procedural hurdle</u>." (emphasis added)).

Dr. Woodruff argues that if Ohio Civ.R. 10(D)(2) is not applied, Ohio medical malpractice claims filed in federal court could "receive wholly different treatment than if the same claim were filed" in an Ohio court. (Doc. No. 15 at 9). The answer to the question of whether or not Ohio Civ. R. 10(D)(2) applies to state medical malpractice claims brought in federal court may have a very real effect on a plaintiff's choice of forum. Assuming the federal court may exercise diversity or supplemental jurisdiction over the claim, a plaintiff who lacks an Affidavit of Merit likely would prefer the forum in which his claim could pass the gate-keeper unimpeded. A colorable claim of medical malpractice, even one nearly certain to fail at trial, theoretically could draw a nuisance-value

11

settlement offer or at least force the defendant to expend time and resources in opposing the claim. Even in these circumstances, however, the plaintiff's choice of forum is not outcome-determinative, as the plaintiff's failure to provide an Affidavit of Merit in state court operates "as a failure otherwise than on the merits." Ohio Civ.R. 10(D)(2)(d); *see Fletcher*, 897 N.E.2d at 151. The Affidavit of Merit is not "admissible as evidence" and may not be "used for purposes of impeachment." Ohio Civ.R. 10(D)(2)(d). In short, it plays no substantive role in determining the merits of the claim.

In *Erie* and its progeny, the Court "cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna*, 380 U.S. at 473. When "a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic." *Id.* (*quoting Guaranty Trust*, 326 U.S. at 108). Ohio Civ.R. 10(D)(2) conflicts with Fed. R. Civ. Pro. 8. Rule 8 is a legitimate exercise of Congress's power over federal procedure through the Rules Enabling Act and therefore the requirements of the state rule do not apply in this case.

## CONCLUSION

For the reasons stated above, Dr. Woodruff's motion to dismiss (Doc. No. 15) is denied.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge